PROVOSTY, J.
Section 27 of Act 49, p. 66, of 1906, known as the “Primary Election Law,” provides:
“Be it further enacted, etc., that no one who participates in the primary election of any political party, shall have the right to participate _ in any primary election of any other political party, with the view of nominating opposing candidates, nor shall he be permitted to sign any nomination papers for any opposing candidate or candidates; nor shall he be permitted to be himself a candidate in opposition to any one nominated at or through a primary election in which he took part.”
Plaintiff and defendant were rival candidates for the office of police juror at the Democratic primary election, and plaintiff was nominated, and his name was printed as the Democratic candidate for that office on the official ballot furnished by the Secretary of State for use at the regular election. The defendant, notwithstanding his having been a candidate in opposition to plaintiff at the primary, was voted for at the regular election, and was returned as elected. A majority of the voters wrote his name on their ballots and scratched off that of plaintiff. Plaintiff then brought the present suit, contesting the election. The contest is based on the twofold grounds that a *438 sufficient number of illegal votes were counted to have changed the result of the election, and that defendant was ineligible. The amount in dispute, which is the salary of the office, is less than the lower limit of the jurisdiction of this court ratione materise; but this court has jurisdiction, irrespective of amount in dispute, of all cases in which a statute has been declared to be unconstitutional, and the appeal, which is by plaintiff, has been brought to this court on the assumption that the lower court declared the above transcribed statute to be unconstitutional in so far as disqualifying a candidate defeated at a primary from being a candidate in opposition to the candidate nominated at the primary. Defendant controverts that assumption, and says that the contrary appears from that part of the reasons for judgment of the learned judge a quo bearing upon the eligibility of defendant, which reads:
“On the question of eligibility urged by plaintiff’s counsel, the court was of opinion at one time that a: candidate who participated in a primary election, and was defeated by his opponent, had no right to become a candidate at the general election; but some years since the Supreme Court passed on that question, and decided that such a candidate had a perfect right to run at the general election. The decision could not be found, but it is recalled that it was rendered in a case where two candidates for membership of the school hoard had run in a primary election and at the general election. The defeated candidate before the primary ran again at the general election, and was elected, and the Supreme Court held that his election was valid.
“The court considers that part of the primary election, since the Supreme Court has passed upon it, that it is nothing more than a moral obligation. Just lite candidates for the United States Senators who submitted their names at the last primary election would have a perfect right to become candidates before the Legislature, and, if elected, their election would he a valid election.”
Defendant’s learned counsel say that the learned judge a quo did not mean by this that the said statute was unconstitutional, .but merely that it had application only to primary elections and not to regular elections, and hence had no bearing upon the eligibility vel non of defendant at the general election. In this contention defendant is not correct. The question of whether or not said statute has reference to general elections was raised in the lower court by an exception of no cause of action, and the question of unconstitutionality was raised only in the answer on the merits, and this answer was filed only after the exception of no cause of action had been tried and overruled; so that, when the learned judge a quo handed down his reasons for judgment on the merits, the question of the applicability vel non of said statute to general elections was no longer before him for decision, it having been already decided in disposing of the exception of no cause of action, and therefore our learned brother necessarily had reference to the unconstitutionality of said statute in the above transcribed part of his reasons for judgment, for on no other hypothesis could his decision have then gone against plaintiff. Besides, if the idea intended to be expressed by him had been that said statute had no application to general elections, he would not have said that said statute created a moral obligation on the part of the candidate defeated at the primary not to become a candidate at the general election in opposition to his late competitor at the primary, for a statute that has no application can no more create a moral obligation than a legal obligation. Moreover, if any doubt were possible that our learned Brother meant in his said reasons for judgment to hold said statute to be unconstitutional, such doubt would be removed by the following entry on the minutes of the lower court:
“On motion of plaintiff’s counsel, made in open court, a devolutive appeal was granted returnable to the Supreme Court of Louisiana on that branch of the unconstitutionality of section 27 of Act 49 of 1906.”
The motion to dismiss the appeal is therefore overruled.
*440 Besides the exception of no cause of action already referred to, defendant filed an exception of want of proper parties, meaning by the latter exception that the state should have been a coplaintiff: in the case.
In support of the latter exception defendant cites the decision of this court in the case of Roussel v. Dornier, 130 La. 367, 57 South. 1007, 39 L. R. A. (N. S.) 826. That case is easily distinguished from the present one. In it the plaintiff was not claiming to have been elected, and was not contesting an election. All that he alleged was that there was to be an election at which he was to be a candidate, and that the defendant, although not eligible, was figuring as a candidate, and the parish committee was allowing him to do so. There was not involved in the case the right to an office; but solely the qualification of the competitor of plaintiff to figure as a candidate. The court held that this matter of the qualification of persons to offer as candidates was one of public concern in which the state had an interest, and that to the suit bringing this matter before the courts the state should be made a party. Differently from that suit the present suit does involve the right to an office. Again, that suit was not brought under a special statute, whereas the present one is, namely, under Act 24 of 1894, p. 27, expressly prescribing the mode in which suits like the present to contest election to an office may be brought, and not requiring the state to be made a party. The exception of want of proper parties was therefore rightly overruled.
The exception of no cause of action, as already stated, was founded upon the supposed inapplicability of the hereinabove transcribed section 27 of Act 49 of 1906 to general elections. This section may or may not be unconstitutional, but the election at which it forbids the defeated candidate from becoming a candidate in opposition to his I ' competitor at the primary is most certainly and unquestionably the general election. It cannot in the nature of things be any other, since it is not possible for the defeated candidate at the primary to be a competitor to his late opponent at any other. There are but two elections — the primary and the general. After a person has been nominated at the primary, he is not again a candidate, and no one can possibly be a candidate in opposition to him, except at the general election. The prohibition to his late competitor in the primary to again compete with him necessarily therefore applies to the general election; it cannot possibly in the nature of things apply to any other.
The constitutional provisions said to be violated by the said section 27 of Act 49 of 1906 as applicable to general elections are alleged in the answer to be articles 1, 2, 15, 202, 210, and 212 of our state Oonstitution. Said articles read as follows:
“Article 1. All government, of right, originates with the people, is founded on their will alone and is instituted for the good of the whole. Its only legitimate end is to secure justice to all, preserve peace and promote the interest and happiness of the people.
“Art. 2. No person shall be deprived of life, liberty or property, except by due process of law.”
“Art. 15. This enumeration of rights shall not be construed to deny or impair other rights of the people not herein expressed.”
“Art. 202. The following persons shall not be permitted to register, vote or hold office or appointment of honor, trust or profit in this state, to wit: Those who have been convicted of any crime punishable by imprisonment in the penitentiary, and not afterwards pardoned with express restoration of franchise; those who are inmates of any charitable institution, except the Soldiers’ Home; those actually confined in any prison; all indicted persons, and all persons notoriously insan'e or idiotic, whether interdited or not.”
“Art. 210. No person shall be eligible to any office, state, judicial, parochial, municipal or ward, who is not a citizen of this state and a duly qualified elector of the state, judicial district, parish, municipality or ward wherein the functions of said office are to be performed. And whenever any officer, state, judicial, parochial, municipal or ward, may change his residence from this state, or from the district, parish, municipality or ward in which he holds *442 such office, the same shall thereby he vacated, any declaration of retention of domicile to the contrary notwithstanding.”
“Art. 212. All elections by the people, except primary elections and municipal elections in towns having a population of less than twenty-five hundred, when such elections are not held at the same time as general state elections, shall be by official ballot, printed and distributed at the expense of the state; and, until otherwise provided by law, such ballots shall have printed thereon and at the head and immediately preceding the list of names of the candidates of each political party or nominating paper, a specific and separate device by which the political party and the candidates of such political party or nominating paper may be indicated. By stamping such device at the head of the list of candidates of each political party, or nominating paper, the voter may indicate that his vote is for the entire or straight ticket of the particular party or nominating paper employing the particular device allotted to such political party, or nominating paper. When the voter does not desire to vote an entire or straight party ticket, he may vote for candidates of any political party or nominating paper, by stamping a blank space to be left opposite the name of each candidate oh said official ballot.
“The General Assembly shall provide some plan by which the voters may prepare their ballots in secrecy at the polls. This article shall not be construed so as to prevent names of independent candidates from being printed on the ballots with a device; and names of candidates may be written on the ballot. These provisions shall not apply, to elections for the imposition of special taxes, for which the General Assembly shall provide special laws.”
Nothing is said, in defendant’s brief to inform us in what way articles 1, 2, 15, 202, and 210 can be said to be violated by said section 27 of Act 49 of 1906 as applicable to general elections; and, as we have not the slightest idea how such violation is to be deduced, we do not feel called upon to discuss the alleged violation of these articles.
The violation of article 212 is said to consist in that by said article the voter is authorized to write upon-his ballot the name of any person he may choose to vote for, and he is deprived of that right if the person he votes for is made ineligible. Plainly we have here a non seguitur. By making a particular person ineligible, the voter is not deprived of his constitutional privilege of writing the name of that person on his ballot. By doing it he throws away his ballot; that is all. The voter cannot be deprived of his constitutional privilege of writing upon his ballot the name of any person he pleases; but, if he writes the name of a person disqualified for the office in question, he merely throws away his ballot.
Our learned Brother should have trusted more to his own good legal judgment, and not followed this ignis fatuus of some judgment of this court which nobody seems to be able even now to locate.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that there now be judgment in favor of plaintiff and against defendant setting aside the return of the commissioners of election which declared the defendant elected to the office of police juror for the Fifth ward, parish of Avoyelles, at the election held on April 16, 1912, and now declaring the plaintiff to have been duly elected at said election, and to be now entitled to qualify for said office and to hold same during the term prescribed by law, and that defendant pay the costs of this suit.